Illinois Cent. R. Co. *v.* Cox.*

(Division B.    June 16, 1924.)

[100 So. 520.    No. 24089.]

1. Carriers.    *Liable in substantial damages for conductor's enforcement of separate coach law in offensive manner.*

   Where a carrier is required by law to provide separate coaches for the white and colored races and required to enforce the law, it must do so in a reasonable manner, and, if a conductor in enforcing the rule curses a passenger or acts in an offensive and insulting manner, the carrier is liable for substantial damages, and recovery is not limited to nominal damages.

2. Carriers.    *Courts will limit damages for insulting passenger in enforcement of separate coach law; verdict in excess of $1,000 for offensive and insulting manner of enforcement of separate coach law by conductor held excessive.*

   While a carrier is liable for actual and punitive damages for insulting a passenger in the enforcement of the law or its rules, still the court will look to the whole case and consider the circumstances, and will restrain the award to reasonable limits. The facts of the case considered, a verdict in excess of one thousand dollars will be deemed excessive.

---

*Headnote 1.    Carriers, 10 C. J., section 1399;    2.    Carriers, 10 C. J., section 1402.

APPEAL from circuit court of Holmes county.

HON. S. F. DAVIS, Judge.

Action by A. C. Cox against the Illinois Central Railroad Company. From a judgment for plaintiff, defendant appeals. Affirmed on condition of remittitur.

*May, Sanders & McLaurin,* for appellant.

I. Defendant was Entitled to the Peremptory Instruction. It is claimed that the train porter was insulting in demanding of the plaintiff that he show his tickets before boarding the train. The plaintiff's own testimony completely disposed of that claim. He testified that the porter demanded that he show his tickets, which he refused to do, thus himself violating a reasonable and lawful regulation of the railroad company promulgated for the protection of passengers, and walking rough shod over it. And the plaintiff further testified that the negro porter was not insulting, but just talked like any other negro. Of course, it was not an insult for the porter to require this plaintiff—Delta county sheriff though he was, to show his tickets; and despite the demand which was politely made, this same officer, who in his testimony made much of the fact that he was a representative of the state of Mississippi, refused to exhibit his tickets for himself and prisoner and passed on. The humble servant of the railroad company discharged his duty in demanding the tickets, while this law officer ignored it and brushed aside this lowly representative of the railroad company, who was stationed there to perform a duty in enforcing a regulation designed mainly for the protection of the public.

It was claimed in the declaration that the conductor was insulting to the plaintiff; that he said to the plaintiff, "Get out of this car with your negro prisoner, and move that damn stuff out of here"—or words to that effect. This was denied by the conductor and three other witnesses, two of whom were passengers. But conceding

for the sake of argument, the truth of this testimony of the conductor, we submit it did not amount to insult, but was merely bruskness or crudity. *Railroad Co.* v. *Gill*, 66 Miss. 39; *K. C. M. & B. R. R. Co.* v. *Fite*, 67 Miss. 573; *I. C. Railroad Co.* v. *Brookhaven Machine Co.*, 71 Miss. 663.

II.   Plaintiff was not Entitled to Recover Any Damages Because None Were Shown, and at Most Was not Entitled to More Than Nominal Damages, and Hence the Judgment is Excessive. The verdict of the jury was excessive. Nowhere in the record is there to be found any testimony by the appellee that he was injured in any way by the matters of which he complains. He does not claim that he was humiliated, embarrassed or discommoded. Hence, if he was legally injured, which we deny, he was not damaged and the instruction requested by the defendant, limiting the right of recovery to nominal damages, should have been given. The appellee on this trip was bound to ride with the negro by his side. By this duty as sheriff, he was compelled to ride with his negro prisoner, and from this, there was no escape, and when he went into the negro coach, he himself said there were no negroes there and only one or two came in, remained a short time, and went out again. He thus had the coach practically to himself, and while we earnestly maintain that there was no legal wrong done the appellee by requiring him to take his negro prisoner into the negro coach, still, if it was an injury, it was a case of *injuria sine damno.*

But it will doubtless be contended that the alleged insulting language of the conductor will sustain a verdict for substantial damages. Our answer to this is that the language employed by the conductor was not insulting, and if it was, appellee did not claim to have had his feelings hurt in any way and there could have been no humiliation because his fellow passengers say they heard no such language used. We believe the decisions of this court sustain us in our contention that the use of

the word "damn" in this connection is not *per se* profane or insulting, and the appellee does not claim that he felt mentally distressed. or insulted by it. It is safe to assume that the ears of one who had been sheriff and deputy sheriff in the Mississippi Delta for twenty-five years would not have been offended by so mild an expletive. The fact, if it be a fact, that the word was used by a train conductor could give it no added significance. It isn't fair to say that "in the Captain but a choleric word, which in the soldier is flat blasphemy," nor *vice versa.* Substantial damages will never be presumed, but must be proven, and if a legal right is shown to have been invaded, without proof or more, only nominal damages may be recovered. This is the general rule to have been invaded, without proof of more, only nominal damages are not recoverable. *Weller v. M. K. & T. R. R. Co.,* 187 S . W. 374; *Conerly v. Same,* 187 S. W. 376.

And even in a case where injury and damage were both established, the Tennessee court held that a verdict for seven hundred fifty dollars was excessive and reduced the judgment to two hundred fifty dollars. *Shelton v. C. R. I. & P. R. Co.,* 201 S. W. 529, 139 Tenn. 378, L. R. A. 1918D, 707. .

*Noel & Neilson,* for appellee.

The assignments of error, condensed, are in effect contentions that appellee should not have been given any damages other than possibly nominal damages. Counsel for appellee practically overlooked or forgot the former opinion rendered in this case. *Illinois Central Railroad Co. v. Cox,* 132 Miss. 471, 96 So. 685.

*Damages are Reasonable and Proper.* I. "A railway company impliedly warrants that its engineers, and other employees, engaged in running its trains, are possessed of due skill, and are competent and faithful, and is under all circumstances liable for any injury occasioned by the misconduct, rashness, or negligence of such

persons; and where the injury is caused by the gross neg-
ligence or wanton and wilful misconduct, it is liable for
exemplary damages.'' *New Orleans, etc., R. Co.* v. *All-
britton,* 38 Miss. 243; *Memphis, etc., R. Co.* v. *Whitfield,*
44 Miss. 466; *Yazoo & M. V. R. R. Co.* v. *Fitzgerald,* 50
So. 631; *Railroad Co.* v. *Moreland,* 104 Miss. 312,. 324;
*Railway L. & P. Co.* v. *Lowry,* 79 Miss. 431, 436, 7;
*N. O. J., etc., R. R. Co.* v. *Hurst,* 36 Miss. 660.

In the case last above mentioned a verdict for forty-
five hundred dollars, for much less injury was sustained.
The authorities were ably reviewed and fully cited.

*Everett & Forman,* also for appellee.

Was the plaintiff entitled to recover because of the
insulting manner and language used by the conductor
toward the plaintiff?

We cannot conceive of any more insulting language and
conduct which could have been used by the conductor or
anyone else and not caused physical difficulty. Here is
the plaintiff, a gentleman, several times honored by the
people of his county with the highest office in their gift,
who is performing his official duty in bringing a negro
prisoner back to his home county to be tried, and the
conductor walks up without cause or provocation and
says, ''Get your damn stuff and get out of here or I'll
stop this train and put you off. I've put sheriffs off be-
fore and I'll put you off. I don't give a damn who you
are. I don't want to see your damn card. Get up and
get out.'' This is the language and conduct which coun-
sel characterizes as ''merely brusqueness and crudity.''

The jury passed upon the language and the demeanor
of the conductor and held it to be insulting and threat-
ening and believed the version given by Mr. Cox and did
not believe the denials entered by the witness for the
appellant. *Railroad Co.* v. *May,* 104 Miss. 422. The May
case is on all-fours with this case. Young May who had
been discharged was talking to one of the clerks with ref-

erence to his pay when the agent came into the room, proceeded to curse him out, and put him out of the room. The jury in that case returned a verdict for six thousand dollars in favor of the appellee, and this court upheld that verdict as not being excessive. Therefore, we submit that the verdict in this case for two thousand dollars reached by the jury after observing the witnesses who testified for the appellant, and passing upon the whole matter, saw fit to impose a penalty of two thousand dollars, certainly taking into consideration the language used, that sum is not excessive, and it does not indicate passion or prejudice on the part of the jury.

Argued orally by *A. J. McLaurin,* for appellant, and *E. F. Noel* and *F. E. Everett,* for appellee.

ETHRIDGE, J., delivered the opinion of the court.

This case was before this court on a former appeal and is reported in 132 Miss. 471, 96 So. 685, where a full statement of the facts is set forth in the opinion. In the former case we held that a carrier of passengers may adopt and enforce rules requiring passengers to exhibit tickets before entering trains, and also held that under the laws of Tennessee where the action arose the law required the separation of white and colored passengers, and that where a sheriff was in charge of a person of the colored race that he was not entitled to ride in the white compartment with his negro prisoner, but was entitled to ride in the colored passenger coach with his prisoner because his duty required him to safely keep his prisoner, and it was also held that where a servant of the railroad company enforcing the rule for the separation of the white and colored races uses insulting and offensive language to the passenger, or uses undue violence in enforcing the same, the carrier is liable to the passenger for actual and punitive damages.

On a remand of the case to the court below, it was tried on the sole question as to whether or not the conductor was insulting in enforcing this rule. The testimony of the plaintiff was substantially the same as in the former case as to this feature of the case. The plaintiff perhaps strengthened his testimony somewhat as to the effect the language had upon him, as shown by the following testimony:

"Q. Tell the jury what effect that had upon you. A. Made me very mad, not being in position to resist it. I think I went home and got sick. I was naturally humiliated, as I had never been treated in that manner before. I had been riding on all sorts of trains with conductors and never run across one of this species before. I felt like in my official position, representing the state of Mississippi, I was entitled to courteous treatment, and I was paying my fare too."

Among other assignments of error, it is assigned for error that the verdict is excessive; the verdict on this trial being for two thousand dollars. On the former trial the verdict of the jury was for one thousand four hundred ninety-five dollars for the alleged violation of the plaintiff's right to ride in a white compartment with his prisoner, and also for the conversation with the porter in which he was requested to exhibit his ticket before entering the train, the porter being a negro, and for the insulting language now relied on. The former decision eliminated the first two questions and left the trial for the damages resulting for the insulting language used by the conductor in ejecting the plaintiff from the white compartment.

It is contended, first, that the plaintiff was only entitled to nominal damages and that no actual damage was sustained. We do not think that the plaintiff was limited to nominal damages and, although the court below instructed that no actual damages were shown by the proof, we think plaintiff was entitled to some actual damage for being insulted. The plaintiff under his ver-

136 Miss.—9.

sion was also entitled to punitive damages, as was held in the former opinion.

As the cause of action arose in Tennessee, and as the right of the parties, so far as the substance of the right is concerned, is governed by the law of Tennessee, and while we might not be bound by the same rules in determining whether there should be a reduction of damages where the judgment is deemed excessive, still we think it proper to look to the laws of Tennessee and consider the practice of that state in such matters.

In the case of *Shelton* v. *C., R. I. & P. R. R. Co.,* 139 Tenn. 378, 201 S. W. 521, L. R. A. 1918B, 707, there was a recovery of seven hundred fifty dollars in that case where the railroad company permitted the use of a dining car carried in its train by both colored and white passengers by having a rule providing for their being served at different hours. In that case a servant of the defendant railroad company announced in the white passenger coach the last call for dinner, and the plaintiff immediately went into the dining car, took her seat, and ordered her meal. Before it was served, two colored women took seats at another table and ordered their meals, and the servants of the railroad company, being colored men, began to eat their meals, whereupon the plaintiff got up and left the dining car; but as she approached the door the employee of the railroad company in charge demanded that she pay for the meal she had ordered before she left the dining car. She pushed him aside and returned to the car where she was riding, and the servant followed into the car, and some words passed, which the court stated might be considered insulting. In that case the court reduced the verdict to two hundred fifty dollars.

In the case of *C., N. O. & T. P. R. R. Co.* v. *Harris,* 115 Tenn. 501, 91 S. W. 211, 5 L. R. A. (N. S.) 779, the appellee was plaintiff in the court below and recovered a verdict for one thousand eight hundred dollars for the insulting conduct of the conductor growing out of the

passenger not having a ticket at the time the conduct occurred. The plaintiff in that case applied for a ticket at one of the ticket offices of the carrier and was given a ticket to another point where there was a change of some kind with an order for a ticket at that point. When the train in which the plaintiff was riding reached that point, there was no one in the ticket office to issue the ticket for which she had an order, but she was told by an employee of the railroad company to go to another station a few miles further on, where she could procure her ticket. She was directed to give an order to the porter of the sleeping car, and did so, but on reaching the said station the train did not stop long enough for the porter to procure a ticket on the order. The conductor went to the berth in the sleeping car where the lady. had retired and rudely demanded a ticket. He opened the berth without giving notice, where the plaintiff was disrobed, and she felt greatly abused and humiliated by the conduct of the conductor of the Pullman car. The trial court reduced this verdict to one thousand five hundred dollars and it was sustained for that amount by the supreme court of Tennessee.

In the case before us the facts are far less aggravating than in the case last cited, and also far less aggravating than the language and conduct used in the case of *Y. & M. V. R. R. Co.* v. *May,* 104 Miss. 422, 61 So. 449, 44 L. R. A. (N. S.) 1138.

The jury in the former appeal of this case for the three elements of damage above referred to allowed one thousand four hundred ninety-five dollars, and taking all of the facts into consideration, we think the verdict here is excessive; but, if the plaintiff will remit one thousand dollars, the judgment will be affirmed, otherwise it will be reversed and remanded.

*Affirmed, with remittitur.*